Good afternoon. We have Judge Porter, Judge Roth, and I have three cases this afternoon. The first is for 18-2823, Pryce v. Attorney General, Ms. Stressinger, I hope I pronounced that semi-correctly, and Ms. Iverson. Ms. Stressinger, you're on. Okay. May it please the court, my name is Anna Stressinger, and I represent the petitioner Mr. Shane Pryce in this matter. Before I begin... Can I just at the outset just ask, see if I can review the bidding here. This is a strange case in terms of trying to determine whether we have jurisdiction. It looks like the IJ dealt with a residency issue dealing with the stop-time rule and discretion as a backup, if you will. Then there was a pro se notice of appeal to the BIA, which mentioned residency and discretion. Council came in then and made concessions or conceded residency. And then the BIA, I guess, dealt with the ineffective assistance of council. And then the BIA dealt only with that, and now the appeal to us is dealing only with residency. I'm kind of lost as to what's... Usually you have to bring up an issue. However, our Smith case says if you have a notice of appeal that touches on an issue, it's exhausted, even if your operation brief didn't deal with it. But can you set us straight as to what's going on? Yes. Well, throughout the entirety of what you just explained, the question of whether petitioner is statutorily barred under the stop-time rule has run across everything. It is true that notice of appeal on its face is sufficient to provide jurisdiction to this court. And petitioner's notice of appeal here, which you filed pro se, does just that. It raises two issues. The IJA's determination of petitioner's eligibility for cancellation of removal under the seven-year issue and the IJA's exercise of discretion. That alone should be enough. This court has said so. In hopes of a holder in Johnson v. Attorney General, identification of an issue in a parties notice of appeal sufficiently apprises the BIA of the basis of the appeal. And even a terse notice of appeal would have supplied the grist to the administrative process if it had identified the issue with some specificity. But here the appellant has said that before the BIA that he lacks statutory eligibility for cancellation of removal. Now, don't we have to consider that position as the position that he's arguing? And can we flip sides if you think, well, another argument is better after you have conceded you're not eligible? We don't believe that he conceded this issue in his briefing. No, the question is, but did counsel concede for him? I mean, to throw another wrinkle in here, we have a not-presidential case, so I concede it's not-presidential, called Hong, O-N-G, that says, essentially, if you expressly concede in your brief to the BIA an issue, it's not exhausted for purposes of appeal to us. And, again, we don't believe that he conceded the issue in his briefing to the BIA. Counsel did, did he not? He conceded on the residency issue. Counsel reiterated what the IJ stated when it came to when the time was cut off. He did that, she did that within the context of explaining why the original counsel, the first counsel, was ineffective in pursuing a theory of the stop-time rule that didn't have any legs, that he restarted a new period of continuous residence after he was paroled into the United States, and that time had accrued more than seven years by the time he received his notice to appear. The question of whether he was statutorily barred has still continued throughout. So, and in any event, the statute, the same statute, 8 U.S.C. 1152 A2D states that nothing in this chapter will, which eliminates judicial review, shall be construed as precluding review of questions of law raised upon a petition for review filed with an appropriate court of appeals. This question of law, the appropriate interpretation of the stop-time statute, and there have been multiple interpretations in this case, what the appropriate interpretation is, is a matter of law, and whether petitioner is statutorily barred is a matter of law. So, this issue has continued throughout, and the BIA decided on that issue. When you are, let's assume that somehow there is exhaustion in light of Smith, but when you get to the residency, the merits issue, doesn't Barton take away everything? I'm glad you brought this up. So, we have two Supreme Court cases in this case that really speak to this issue. The most recent is Barton, and we also have Barteles, which was in 2012. Now, we briefed this case before Barton was issued, and in that case, although it dealt with a different provision, the grammatical structure is very much similar to the structure that we have here. In that case, Justice Ginsburg interpreted a provision. It was 8 U.S.C. 1101A13CV, which refers to Section 1182 using the same language as the stop-time statute. There, the Supreme Court concluded, and I quote, The entire Section 1101 phrase, committed an offense identified in Section 1182A2 on a straightforward reading, appears to advert to a lawful prominent resident who has been convicted of an offense under 1182A2. And the only difference in that phrasing between 1101 and the stop-time rule is 1101 states committed an offense identified in Section 1182, and the stop-time rule uses the term who has been convicted of an offense referred to under 1182. This court actually noted this in its orders granting petitioners' request for a stay of removal, and this court stated, and I quote, Does the date of that order precede Barton? It does. So in Barton and in Vartelis, they both have one thing in common, which is they were not presented with the issue at bar here, although they both spoke to it, and they came out on different ends. In the defense, not the defense, the dissent in Barton identified just that, that it did not, it answered the question before the court here, but it was not briefed on the issue, and it was not necessary for resolving the case. So we really have two Supreme Court opinions, both speaking to this issue in dicta, and speaking to them in dicta and not really having a controlling effect, which is why, oh, go ahead, go ahead. How do you distinguish this case from Barton? Run that by me again. How do I distinguish this case from Barton? Well, Barton dealt with a different issue. Specifically, it had two questions. First, whether a lawfully admitted permanent resident who is seeking, who is not seeking admission to the United States can be rendered inadmissible for the purpose of the stop time rule, and whether a section 1182A2 offense may preclude cancellation of, excuse me, cancellation if that offense is not one charged with removal. So in that case, there were multiple offenses, and the ones for which Barton was found removable is not the one for which he was found to be in, unable to receive cancellation of removal. So the question was, can a conviction that is not the one that led to the immigrant's removability affect his applicability for cancellation of removal? But Barton is not dicta, what you just said. That's not dictas. That's not dicta, but in answering that question, the court did not need to get to whether the 1182 points to time, whether it points to commission or conviction of that crime. It did go that far, but that issue was not briefed. And here we have different facts. We have a single crime, and it's the same crime affecting his cancellation removal as the crime for which he was found removable. What is the status of his post-conviction relief in state court? Currently, he's pursuing it. He just, September 1st, he was denied his post-conviction relief, but he is currently appealing it. This case is still ongoing, which is why, in addition to having Bartolis and Barton, we have the same Supreme Court that decided those cases also decided Padilla. And he is seeking relief under Padilla currently in a concurrent path. His original attorney failed to advise him of the immigration consequences of his taking a plea deal. And he is currently pursuing that right now, which is why, although we're requesting that this court. But what you're arguing before us is not ineffective assistance of counsel. You're arguing the rest of the issue appears to be foreclosed now by Barton. And by not having the ineffective assistance of counsel before us now, isn't that in effect by the boards waived, forfeited, whatever? We believe that the couple of things we believe that the residency issues is has been preserved throughout. It's been underlying everything throughout. We do not believe that it's foreclosed by Barton because Barton was not faced with that question. But Barton, I still find very persuasive on the subject, looking at how do you consider the date of an offense committed by a lawfully admitted alien. And I think that the Supreme Court says it goes after conviction, it goes back to the date of the offense. That seems to be a lesson that Barton is telling me. And I find it very difficult to apply a different rule, whether it's dictum, whether it's relevant part of the holding. I find it difficult to say otherwise, very frankly. The way that the court justified its reasoning in Barton was to analogize the stop time rule of cancellation of removal with a recidivist sentencing statute. Essentially, they said that when a defendant has been convicted and is facing sentencing for one crime, the court can look back at other convictions when determining the proper sentencing. That analogy works for Barton because you hear you have multiple convictions that carry different immigration consequences. But that application doesn't apply to a case like this one, where you have one crime. In a recidivist statute, essentially, you have greater possibility for greater punishment for more crimes. Here you have one crime, you could have several crimes. What the Supreme Court is telling us is that that crime will count as a crime committed as of the date. So for the stop time rule, applying that rule, you have to be convicted of the offense. But once you're convicted, it goes back to the time when the offense actually occurred. And that's the sense I make out of Barton. And applying it to this case, I think your client, unfortunately, is out. Well, the Supreme Court did not have to answer the question of when the crime occurred. They didn't have to answer it, but they gave me persuasive language that I find very compelling. Now tell me why it shouldn't be compelling. Tell me why when there has been a conviction, you shouldn't go back to the date the crime was committed. That's when he interfered with being a good resident of the United States. Well, we believe that a straightforward reading of the stop time rule indicates that it is the date of conviction under 1182 that controls the immigration consequences that will attach to it. You have a statute that has multiple parts, and it references another statute. So we have to look at both of them together. And in order to understand them properly, we cannot read them in a way that the narrowest provision is moot. In here, the narrower provision is 1182. The stop time statute uses the term committed, but then it refers to 1182, which gives us the conviction language. We think that that reading is in line with traditional norms of statutory interpretation, and that is why we disagree with Barton and believe that we disagree with the dicta in Barton. We agree with the dicta in Bartellus because that reading has... Dictum. Dictum. Dictum. It's singular, not dicta. Right? Singular. You can tell Judge Roth and I both had Latin. Did you wish to reserve any time for rebuttal? I did not. Yes, five minutes. Five minutes, please. Instead of 15, we've already given you about 17. You want to make it three? Let's make it three. Okay. Thank you. We'll go from Ms. Iverson. Okay. Thank you. Good afternoon, Your Honors. May it please the Court, my name is Julie Iverson, and I represent the United States. Petitioner conceded in his appellate brief to the board that he was statutorily ineligible for cancellation of removal. He stated, quote, the termination of the seven years of continuous presence in this instant matter ended on the date of Mr. Price's arrest in May 2008. He also stated in his appellate brief to the board, quote, this is not a situation in which Mr. Price had a small chance of success. This is a situation where Mr. Price was statutorily barred. Now to this court, he seeks to relitigate his case and raise an issue that he never brought to the board in the first instance. I guess the way it could be done is if he and the counsel did bring up an ineffective assistance of counsel claim to the BIA, and the BIA ruled on it, and nested within that is how counsel dealt with the residency issue. So in effect, might it therefore have been inferentially or impliedly dealt with the residency issue, which is now on appeal before us? Respondent thinks that the language used in the brief to the board, which says that he was statutorily ineligible, and the ineffective assistance claim that he raised says that his former counsel was ineffective for even applying for that form of relief. So respondent's position is that it's not implicitly raised, given that language that says that his former counsel, before the immigration judge, erred by even encouraging him to apply for a form of relief for which he was never eligible. Okay. Can we review the BIA's ineffective assistance of counsel ruling on this appeal? No, your honor, we cannot because it was not raised in the opening brief. And because it was not raised and argued, it should be considered waived and abandoned by this court. Well, in part, it may be because the order that was entered by our court pre-Barton teed up the issue, did it not? Yes, your honor, the order of the court denying the stay did raise the issue, but the court did not address whether or not the issue had been exhausted to the board. And in order for this court to consider this issue, it has to have been properly exhausted under 8 U.S.C. 1252 D1, and petitioner has not overcome that jurisdictional hurdle. So even if there is a question of law with respect to whether it's the date of the commission or the arrest versus the conviction, it was never presented to the board to give argument in the first instance. And so because petitioners failed to overcome that jurisdictional hurdle, even if this is a question of law, this court cannot review it. Go ahead. Because he did not present it, our position also is that this court's case law, such as Hoxa, which has said that something that is raised in the notice of appeal can be deemed exhausted, does not apply because it's distinguishable. In Hoxa, the petitioner raised an issue in the notice of appeal, and then never raised it in the ensuing supporting appellate brief to the board. And you're saying here there was an act of confession? Yes. So it's distinguishable from this court's case law, such as Hoxa, because here it's not a case where it was never raised again. To the contrary, he specifically said that he was not eligible for cancellation of removal. Because he conceded that he was not eligible for cancellation of removal, the board was not on notice that that was an issue that it should address. Because the board did not have notice and did not address it, it was not exhausted, and this court should not consider it and should dismiss for lack of jurisdiction based on his failure to exhaust. Alternatively, respondents' position is, if the court does deem that this has been exhausted, despite him saying that he was not eligible for the relief he's now seeking, our position is that the Supreme Court's decision in Barton v. Barr resolves the issue. In Barton v. Barr, the Supreme Court stated, as Congress specified in the statute and as the BIA and the Courts of Appeals have recognized, the date of commission of the offense is the key date for purposes of calculating whether the noncitizen committed an 1182A2 offense during the initial seven years of residence. The court concluded that cancellation of removal is precluded if a noncitizen committed a Section 1182A2 offense during the initial seven years of residence, even if, as in Barton's case, the conviction occurred after the seven years elapsed. That seems to describe the exact situation that we have with Mr. Price. The Supreme Court cited with approval several cases that have addressed this issue, the Board's case in Matter of Perez, the Second Circuit's case, Eredea, the Fifth Circuit's case, Calise, and Eredea all dealt with controlled substances offenses, as did Matter of Perez. Also, Eleventh Circuit, the case that was being reviewed by the Supreme Court, the Eleventh Circuit noted in Note 3, quote, there's one clarification worth making here. Although it is an alien's conviction of a qualifying offense that renders him inadmissible for stop time purposes, his period of continuous residence is deemed to terminate on the date he initially committed that offense. So in effect, his conviction based inadmissibility related back, our term, to the date of the crimes commission. Since the Supreme Court issued Barton, the Fourth Circuit has also come out and said in Argueta that it was the date of the commission of the offense that's relevant for purposes of the stop time inquiry. Also, something worth noting, Your Honor, there was a case that was sort of a companion case of sorts to Barton, which was Jobe. Jobe did more explicitly address this issue, and it was held in abeyance pending Barton by the Supreme Court. And once Barton was issued, the petitioner filed a supplemental brief, and in that supplemental brief, he noted the language of the Supreme Court could be considered as being authoritative on this issue of what's the, whether it's the commission that's the relevant inquiry. And he filed a supplemental brief, and the Supreme Court shortly thereafter denied cert in that case. The respondent does not know of a court of appeals that has gone the other way on this issue, and so if this court did agree with petitioner's position, it would be creating a circuit split on an issue that was never presented to the board and exhausted. If we do have jurisdiction, don't we have to remand rather than decide the merits question ourselves? Your Honor, we believe that you, if you do have jurisdiction, we believe that the authoritative language of the Supreme Court in Barton resolves the case and that you would not need to remand. However, if the court feels that it does not, that there is some sort of question that needs an answer from the board, an alternative to the alternative argument, then it should go to the board in the first instance rather than the court deciding. But we don't, that is not the position we take, but if it's necessary. Any further questions, Judge Porter, Judge Roth? No. All right. Thank you very much, counsel. Thank you very much, Your Honors. We'll hear from Ms. Stresinger. Ms. Stresinger? Yeah, if you can hear me, Ms. Stresinger, we need you to unmute. It's still muted. Can you hear me now? There we go. Sorry about that. Let me see if I just get some, one fact. You say on September 1 at the state court level he lost, and what was he attempting to do at the state court level? He was seeking post-conviction relief and specifically an evidentiary hearing because the attorney that, his original criminal attorney, my client has stated that he was not advised by him. This attorney has also stated that he does not remember and that he cannot find the file. So my client was trying to seek that evidentiary hearing to show that he had not been properly advised of immigration consequences. And this is an ongoing matter. What court are you before now? Third Circuit. I mean, at the state court level? The Superior Court in Mercer County. Okay. Yeah, I got it. You're before the Third Circuit at this moment. I got that. So, you want to, is it an appeal? Or is it reconsideration? He's pursuing that appeal, which is why, alternatively, we believe, we're requesting two avenues to redress here. We do believe that the BIA should weigh in on this incongruence between Barteles and Barton. So, on the one hand, we request that this court remand to the BIA for consideration of the issue on the first instance. Alternatively, we request that this court preserve my client's stay of removal and hold this matter in abeyance until he is able to resolve the issue at the state court level to finality. What does the remand get you only if all they're going to do is deal with Barton because it came up after they initially decided? I mean, doesn't Barton, whether it's a dictum or it is a holding, doesn't it tell us what the ultimate outcome here is without any question? Well, we're of the mind that it doesn't provide controlling language specifically relating to this issue because it was not briefed on that issue and it was not argued. We believe that it should consider that issue in light of this recent legal development and consider its incongruence with Barteles and weigh in on the exact matter. But alternatively, as I mentioned, we request that at minimum this court hold the matter in abeyance and stay his removal so that he can sort this out in New Jersey's prior court. Because the possibility exists that he could be removed back to Jamaica before his matter in New Jersey is resolved. And it's possible that if he wins that, he will have been removed on a defective conviction. So isn't the purpose of seeking a remand back to the BIA, even if we know the outcome, still somewhat successful to you because what you're doing is buying time? Well, I mean, it does give him time to pursue this further, but we would be more comfortable if his grant of his stay were preserved while he pursued this. So he at least would have that comfort. Usually a grant of stay has to be a reasonable likelihood of success, among other factors, and reasonable likelihood of success need not be by a preponderance, but it needs to be something more than negligible. And it seems like ultimately Martin makes whatever chance of success essentially nil. Well, if he wins this case, well, first of all, I think I've stated that we don't necessarily agree with that characterization of Barton. I think there's still a live issue here. But even regardless of what Barton says, if he is able to succeed in his post-conviction relief, then this case would be essentially moved anyway. Because the whole reason for this case coming before you is resulting from the immigration consequences of a conviction that may very well be defective. And if he's removed before that is resolved, he will have to reopen his removal proceedings from abroad, which has a whole other host of hurdles. So we would like to try to avoid that. And I'll give you 30 seconds to sum up. Well, this case is probably for the court to begin with. The seven-year issue has been raised twice, was raised twice before the BIA. Not only is his notice of appeal is clearly there, but it was also implied, as this court has implied itself, it was implied as an effective assistance to counsel argument. Counsel would not have been an effective had his theory of the statute been correct. So you have to answer whether he was precluded to begin with before you can answer whether his counsel was ineffective. So this is properly before the court. And we request a remand to the BIA or alternatively a bans while he sorts this out in superior court. All right. Thank you very much. Thank you very much, counsel. And Ms. Fettinger, thank you and to your firm for taking this matter on pro bono. It's greatly appreciated by all of us on our court for the work that people do on pro bono cases. And in particular, you on this case. Thank you. Thank you. It's my pleasure.